Patrick J. Ascione (USB #6469)
Malisa Whiting (USB #13108)
Ascione & Associates, LLC
4692 North 300 West, Suite 220
Provo, Utah 84604
T: (801) 854-1200
F: (801) 854-1201
pascione@ana-law.com
mwhiting@ana-law.com
Attorneys for Plaintiff

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHAD MORRIS, Trustee of the ELOISE J. BURTON REVOCABLE TRUST, | **COMPLAINT** |
| **Plaintiff,** | |
| vs. | Case No. 2:10-CV-01209-DB |
| Knox Capital Group, Inc., a Utah corporation; Geneos Wealth Management, Inc., a Colorado corporation; Geneos Wealth Advisors, LLC, a Colorado limited liability company; Ryan Day, an individual; Brodie Barnes, an individual; and John Doe, an individual; | Judge Dee Benson |
| **Defendants.** | |

JURISDICTION, VENUE, & PARTIES COMMON TO ALL COUNTS

1.      This Court has subject matter and personal jurisdiction over each of the parties and real property named and identified herein. Jurisdiction in this Court is further proper pursuant to 28 USC §1331, Section 20(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77v(a), and section 27of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78aa.

2.      Venue is proper pursuant to U.C.A. 1953 § 78B-3-301, *et seq.* Venue is further proper in this Court pursuant to 28 U.S.C. § 1391, Section 20(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

3.      The plaintiff Shad Morris, trustee of the Eloise J. Burton Revocable Trust ("Morris" or "Plaintiff"), is a resident of Washington County, Utah.

4.      The defendant Knox Capital Group, Inc. ("Knox") is a Utah corporation and may be served with process by serving its registered agent Brodie Barnes at 13961 South Minuteman Drive, Suite 300, Draper, Utah 84020 or by serving an officer or manager of Knox at this same address.

5.      The defendant Geneos Wealth Management, Inc. is a Colorado corporation, is a registered broker-dealer in Utah, and may be served with process by serving its registered agent Russell R. Diachok at 9055 E. Mineral Circle, Suite 200, Centennial, Colorado 80112 or by serving an officer or manager at this same address.

6.      The defendant Geneos Wealth Advisors, LLC is a Colorado limited liability company and may be served with process by serving its registered agent Geneos Wealth Advisors, LLC at 9055 East Mineral Circle, Suite 200, Centennial, Colorado 80112 or by serving an officer or manager at this same address.

7.      On information and belief, Geneos Wealth Management, Inc. and Geneos Wealth Advisors, LLC are owned and operated by the same individuals, have the same employees, use the same office space, and are alter egos of one another. For this purpose, any statement alleged against one is alleged against the other, and they will collectively be referred to as "Geneos."

8.      The defendant Ryan Day ("Day") is a resident of Utah County, Utah and may be served with process by serving him with any lawful personal service, by serving him at his place

of work at 13961 South Minuteman Drive, Suite 300, Draper, Utah 84020 or by serving him at his personal residence located at 694 East 1870 North, Orem, Utah 84097.

9.     The defendant Brodie Dean Barnes ("Barnes") is a resident of Utah County, Utah and may be served with process by serving him with any lawful personal service, by serving him at his place of work at 13961 South Minuteman Drive, Suite 300, Draper, Utah 84020 or by serving him at his personal residence located at 24 East Cascade Ave., Alpine, Utah 84004.

10.     The defendant John Doe is an individual hat has yet to be identified but is suspected of being directly involved with the substance of this Complaint and was the registered supervisor of Ryan Day at the time of the plaintiff's investment.

## THE INVESTMENT SCHEME

11.     This matter arises from fraudulent investments in unregistered securities promoted by the defendants Day, Barnes, Knox, and Geneos (collectively "Defendants" or "Promoters"). The plaintiff Shad Morris, Trustee of the Eloise J. Burton Revocable Trust ("Plaintiff" or "Investor") invested in the Promoters' fraudulent, unregistered securities on or about March 29, 2007.

12.     The defendants violated Utah and Federal securities law through the DBSI 2007 Land Improvement & Development Fund ("DBSI LIDF") described below.

13.     This fraudulent investment was one of many fraudulent investments created by DBSI and promoted by the Defendants.

14.     DBSI is a conglomerate of several hundred smaller companies all owned and operated by the same individuals. Many have filed for bankruptcy. These were consolidated and are currently pending. For purposes of this Complaint, the hundreds of DBSI affiliated

companies will be referred to as "Debtors," those not in bankruptcies will be referred to as

"affiliated non-debtors," and collectively they will be referred to as "DBSI."

15.     The Promoters and DBSI raised hundreds of millions of dollars by issuing

securities in the form of investment contracts involving hundreds of real estate properties to

thousands of investors in every state and numerous foreign countries.

16.     Prior to filing for bankruptcy on November 6, 2008 (the "Petition Date"), DBSI

engaged in several different business ventures including (1) property management, (2)

commercial real estate investment/development, (3) residential real estate

investment/development, (4) technology company investment, and (5) certain miscellaneous

business ventures. The DBSI enterprise was conducted through hundreds of different affiliated

corporate entities and partnerships. DBSI largely funded its business enterprise by soliciting

investments from individual investors. The majority of these investments took the form of either

a tenant-in-common investment ("TIC Investment") or an investment in a bond, note, or other

interest issued by a DBSI funding entity ("Note/Bond/Fund Investment").

17.     Prior to the Petition Date, DBSI acquired, developed, improved, and sold real

property. Since approximately 1999, these acquisition and development projects were largely

funded through the sale of Note/Bond/Fund Investments. DBSI raised Note/Bond/Fund

Investment proceeds from Note/Bond/Fund Investors on an unsecured debt and/or equity

investment basis through circulars or private placement memoranda issued by an entity formed

by DBSI for the purpose of raising the particular funding. The advertised purpose of the DBSI

funding entity was to loan or contribute investor funds to projects within the DBSI enterprise. In

some instances, but not all, loans from the funding entity were required to be secured by real

property owned by DBSI affiliates. In other instances, the projects in which funds were invested

were permitted to be encumbered by liens in favor of third-party lenders. Note/Bond/Fund

Investors never received an interest in real property to secure their investment.

18.     DBSI, Inc. guaranteed the Note/Bond/Fund Investment obligations of certain (but

not all) funding entities to Note/Bond/Fund Investors. As of the Petition Date, there were

approximately 13 DBSI funding entities with aggregate Note/Bond/Fund Investment obligations

in excess of approximately $435 million owed to thousands of Note/Bond/Fund Investors. The

following table summarizes the outstanding Note/Bond/Fund Investments for the Debtors as of

the Petition Date.

| Issuer | Type of Investment | Owed on Petition Date |
|--------|--------------------|-----------------------|
| DBSI 2001A Funding Corporation | Bonds | $4,200,000 |
| DBSI 2001B Funding Corporation | Bonds | $9,600,000 |
| DBSI 2001C Funding Corporation | Bonds | $9,300,000 |
| DBSI 2005 Secured Notes Corporation | Notes | $59,000,000 |
| DBSI 2006 Secured Notes Corporation | Notes | $80,000,000 |
| DBSI 2008 Notes Corporation | Notes | $92,000,000 |
| DBSI 2008 Development Opportunity Fund LLC | Notes | $9,250,000 |
|  | Sharing Units | $3,000,000+ |
| DBSI Guaranteed Capital Corporation | Bonds | $17,000,000 |
| DBSI 2007 Land Improvement & Development Fund LLC | Notes | $26,000,000 |
|  | Sharing Units | $35,000,000+ |
| DBSI 2006 Land Opportunity Fund LLC | Preferred Units | $16,000,000+ |
|  | Sharing Units | $8,600,000+ |
| DBSI Real Estate Funding Corporation | Bonds | $43,500,000 |
| DBSI Short-Term Development Fund LLC | Preferred Units | $12,975,000+ |
|  | Non-Preferred Units | $7,000,000+ |
|  | Total: | $432,425,000+ |

19.     The foregoing table illustrates that, although most of the Note/Bond/Fund

Investments were structured as either a Note or Bond investment, four of the Note/Bond/Fund

Investment funding entities—DBSI Short-Term Development Fund LLC, DBSI 2006 Land

Opportunity Fund LLC, DBSI LIDF, and DBSI 2008 Development Opportunity Funds LLC—

sold more than one type of investment:

> a.  DBSI LIDF sold Notes and Sharing Units. The offering materials from DBSI
>
> LIDF provided for a priority system of payments to investors where (i) Note
>
> investors would receive interest payments and return of principal, and (ii) then
>
> Sharing Unit investors would receive fixed percentage returns, a return of
>
> investment, and a share in profits.

20.     Investigation and due diligence conducted during the Chapter 11 Cases have

revealed that, prior to the Petition Date, DBSI ran its affiliated businesses and entities as a

unified enterprise under common ownership and control. A small group of insiders employed

that control to raise cash from investors, commingle it, and then distribute it as needs appeared,

without regard for source or restrictions on use. DBSI used reserve monies obtained from TIC

Investors to pay operational expenses. DBSI used cash raised through Note/Bond/Fund

Investments to pay debts owed to TIC Investors. DBSI also used cash from the issuance of later

Note/Bond/Fund Investments to meet obligations owed with respect to earlier Note/Bond/Fund

Investments and to purchase more properties, many of which were ultimately sold to TIC

Investors to raise still more cash. Funds from TIC Investments and Note/Bond/Fund Investments

were used to found start-up technology companies in which the underlying investors had no

interest.

21.     The global enterprise did not generate a profit for investors and was kept afloat

for many years by an ever-increasing volume of new investor money and heavily-leveraged real

estate transactions. This self-feeding cycle continued until the dislocation in the real estate,

credit, and other financial markets hindered the Debtors' ability to raise sufficient new capital

from investors or obtain sufficient new lending from institutional lenders necessary to continue their real estate acquisition and sale operations.

22.     Despite raising over $100,000,000 in new private placement funds in 2008, DBSI's rampant liquidity problems forced it to file for relief under chapter 11 of the Bankruptcy Code in late 2008.

23.     An Examiner was appointed in the Bankruptcy Case to (a) investigate the circumstances surrounding (i) any and all of the Debtors' intercompany transactions and transfers, (ii) any and all transactions and transfers between and among the Debtors and any Non-Debtor Affiliates, and (iii) any and all transactions and transfers between and among the Debts and any insiders, officers, directors, and principals of the Debtors; and (b) otherwise perform the duties of an examiner set forth in Section 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code.

24.     The Examiner issued his First Interim Report on August 3, 2009 and his Final Report on October 19, 2009, setting forth the results of his investigation into the affairs of the Debtors. In his reports, the Examiner found, *inter alia*, that the Debtors and their Non-Debtor Affiliates were run as a unified business by a control group of senior managers with conflicts of interest; that the Debtors' financial and accounting records are largely unreliable; and that DBSI's collective funds have been so commingled that it would be virtually impossible to trace their actual sources and uses, notwithstanding representations made to investors.

25.     After the Examiner issued his reports, the Chapter 11 Trustee was appointed over the Debtors.

26.     The available evidence points to the fact that the undisclosed practice of running DBSI as a unified enterprise caused investors to believe that the individual companies being

invested in would succeed based on the purported financial strength and competence of the parent company. The Chapter 11 Trustee also determined that it was impossible to truly trace and separate cash obtained from Note/Bond/ Fund Investments and cash obtained from TIC Investments, just as it is impossible to separate cash used to pay Note/Bond/ Fund Investment obligations from cash used to pay TIC Investment obligations. Moreover, a great many transfers of cash and properties between DBSI entities were either constructively or actually fraudulent or otherwise gave rise to claims between the DBSI affiliated entities.

### Promotion of the Investment Scheme to Plaintiff

27.     Geneos is a brokerage firm that researches and provides investment packages and opportunities to its clients, which are investment advisors and investment advisor firms.

28.     Geneos uses other entities and individuals to promote investments on its behalf, including the DBSI LIDF investment.

29.      Knox is one of Geneos's many clients, which promoted the DBSI LIDF investment on behalf of Geneos.

30.     Further, Day and Barnes are employees of Knox and Geneos.

31.     Barnes is one of the partners and owners of Knox and oversees the work of Knox's various employees, including Day.

32.     John Doe is the registered supervisor of Day and oversees all the investments Day sells to investors, including Plaintiff.

33.     On information and belief, Geneos did not obtain a full understanding nor conduct a sufficient investigation of DBSI's financial accounting or interaction with sister companies and affiliates.

34.     Nonetheless, Geneos recommended the DBSI LIDF investment to its investment advisors and investment advisor firms and represented that it had obtained all pertinent information and conducted necessary research into DBSI LIDF to the extent that it understood DBSI's operations and the validity of the investment.

35.     Plaintiff met in person with Day on or about February 14, 2007. As a result of this meeting, Plaintiff engaged Knox as its investment advisor firm and paid Day between $5,000 and $7,500 to be its investment advisor.

36.     All of Plaintiff's interactions with Knox were through Day.

37.     Day represented that he had been advised by Barnes regarding the DBSI LIDF investment and deferred to Barnes's representations on various occasions.

38.     Plaintiff informed Day that the funds in the trust needed to be safely invested and have a guaranteed return sufficient to pay the mortgage and other living expenses of the trust beneficiary, approximately $1,200.00-$1,500.00 each month.

39.     Plaintiff's principal was to remain secure at all times and under no circumstances placed in high risk investments.

40.     Based on Plaintiff's guidelines, Day suggested Plaintiff invest in DBSI LIDF.

41.     Day represented that DBSI was a sound company with many ongoing projects. Day further represented that the DBSI LIDF was stable and would generate income between 12% and 15% overall, and that the investment had a guaranteed 8% quarterly payout on the principal amount invested.

42.     Day further represented that when the property that was being developed was sold, Plaintiff could expect returns of approximately 20% on the back end. Plaintiff was led to believe that the overall investment would take no more than 5 to 7 years.

43.     Based on these representations, Day recommended that Plaintiff invest.

44.     Based on the guaranteed 8% return on the principal amount invested, Day and Plaintiff determined that Plaintiff needed to only invest $180,000 of the overall trust to have the returns necessary to cover the mortgage and living expenses of the trust beneficiary.

45.     Plaintiff was provided a private placement memorandum (PPM) in connection with the investment but was not permitted to retain the PPM for his records.

46.     Instead, Day provided the PPM to Plaintiff for review but required it to be returned before Plaintiff invested in DBSI LIDF.

47.     Pursuant to the PPM dated January 24, 2007, DBSI LIDF offered $24,000,000 aggregate principal amount of 12% Development Notes due December 31, 2011("Notes"). These Notes bear interest at the rate of 12% per annum. Pursuant to the Notes, 10% of the Notes are redeemable annually on a first-come, first served basis. The obligations under the Notes are unsecured. Interested parties were additionally offered the opportunity to purchase "Units" (i.e., membership interests), in DBSI LIDF to raise capital for the acquisition and development of the real property. DBSI LIDF is managed, and all Voting Units are owned by DBSI Development. As of the Petition Date, the outstanding indebtedness on the Notes was approximately $26,000,000, and DBSI LIDF had sold Sharing Units with a total sale value of approximately $35,000,000.

48.     Plaintiff was required to sign a subscription agreement provided by DBSI.

49.     The DBSI LIDF investment is classified as a broker dealer investment, requiring Plaintiff to invest in DBSI LIDF through Geneos instead of Knox.

50.     As such, Plaintiff was required to sign a new account application with Geneos, which it did on March 29, 2007.

51.     Also on March 29, 2007, Plaintiff provided the necessary trust documents as well as a $180,000.00 check made payable to DBSI 2007 Land and Improvement Fund and executed the subscription agreement.

52.     Day failed to review each "investor representation and warranties" section in the subscription agreement.

53.     Instead, any risks noted in the subscription agreement were discounted by Day.

54.     Day continually assured Plaintiff that the investment was safe and secure with the guaranteed 8% return each quarter.

55.     Any questions Plaintiff had throughout the process of deciding to invest in DBSI LIDF were presented to Day.

56.     Day either provided the information himself or deferred to Barnes or representations provided by Barnes regarding the investment.

57.     Plaintiff received its first 8% interest payment in October 2007 and continued to receive the quarterly payments through October 2008.

58.     As the financial problems of DBSI came to light, Day was unwilling or able to provide Plaintiff with answers.

59.     On numerous occasions, Day represented that Geneos had determined that certain information could not be divulged or discussed with individuals that had invested in any of the DBSI entities.

60.     Prior to investing in DBSI LIDF, Plaintiff was not informed that the various DBIS entities commingled funds and used funds from one project to meet the cash obligations of other projects or that the DBSI entities managed cash on a global basis.

61.    Information regarding the commingling of funds was available through the sworn testimony given by Douglas Swenson, controlling investor in DBSI and its various entities, before the Securities and Exchange Commission on June 28, 2005. Swenson stated that he considered anything he had a controlling interest in as being part of the DBSI entities.

62.    He further stated it would be very difficult to trace bond proceeds to particular assets because:

> the cash flows of the entire operation really consist partly from operation but mostly from financing and from sales of assets. So in the final analysis, in order to finance the activities of the entire group, it's really hard to trace where all the funds go to or where all the funds come from. But, with respect to these assets, as well as the financing of any particular property, the debts end up getting attached to specific assets or specific entities, but the proceeds of those debts really, in the final analysis, end up as financing for the activities of the entire group.

63.    This testimony was available to Geneos, Knox, Day, and Barnes before they began the promotion of the DBSI LIDF investments.

<u>THEORIES OF LIABILITY</u>
**Respondeat Superior**

64.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this Complaint as though fully set forth herein.

65.    Plaintiff has been damaged by the faulty and biased advice provided by Day.

66.    Defendants Knox, Geneos, Barnes, and John Doe were aware no due diligence had been conducted regarding the DBSI LIDF investment.

67.    Defendants Knox, Geneos, Barnes, and John Doe permitted representations to be made regarding the validity of the investment.

68.    In his interactions with Plaintiff, Day was acting within the scope and time of his employment with Knox and Geneos.

69.     In giving investment advice, Day was working in furtherance of his employment or engaged in activities of the same general nature as he was authorized by his principal(s).

70.     Defendants Knox, Geneos, Barnes, and John Doe endorsed the representations that were made and were the instigators of the faulty information represented.

71.     Defendants Knox, Geneos, Barnes, and John Doe derived a benefit from Plaintiff's investment.

### Estoppel

72.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this Complaint as though fully set forth herein.

73.     Defendants Knox, Geneos, and Barnes provided the information to Day regarding the DBSI LIDF investment opportunity.

74.     Defendants Knox, Geneos, and Barnes were aware Day was sharing the representations with potential investors.

75.     Defendants Knox, Geneos, and Barnes benefited from Plaintiff's investment in DBSI LIDF.

76.     As a result, Defendants Knox, Geneos, and Barnes are estopped from denying the existence of an agency relationship with Day.

### COUNT I – FEDERAL SECURITIES VIOLATIONS AGAINST DEFENDANTS
**(Deceptive or Fraudulent Devices, Fraudulent Misrepresentations, Misstatements of Material Fact, and Omissions of Material Fact)**

77.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this Complaint as though fully set forth herein.

78.     The Defendants/Promoters engaged in the unlawful offering, sale, and promotion of unregistered securities in violation of the Securities Act and Exchange Act.

79.     A security, among other things, is defined as any note, bond, certificate of interest or participation in any profit sharing agreement, and investment contract. *See* 15 U.S.C. § 77a(2)(a)(1) and 15 U.S.C. § 78a(3)(a)(10).

80.     The investment promoted, offered, and sold to Plaintiff by the Defendants constitutes a "security" as this term is defined and applied under the Securities Act and Exchange Act.

81.     Under the Securities Act, a person commits a violation when a party promotes, offers, or sells a security through a prospectus or oral communication and that includes an untrue statement of material fact or omits to state a material fact necessary to the statement not misleading. *E.g.,* 15 U.S.C. § 77a, *et.seq.* Further, under the Securities Act, a party also commits a violation when they (1) employ any device, scheme, or artifice to defraud; (2) obtain money or property by means of any untrue statement of material fact or omission of a material fact necessary to make the statement(s) not misleading; or (3) engage in any transaction, practice, or course of business that operates or would operate as a fraud or deceit upon the purchaser. *Id.*

82.     Under the Exchange Act, it is unlawful for a party, in connection with the purchase or sale of a registered or unregistered security, to use any manipulative or deceptive device in contravention to any rule(s) promulgated by the SEC. *E.g.,* 15 U.S.C. §78a, *et seq.* Under one such rule, 10b-5 promulgated by the SEC, it is a violation for any party in connection with the purchase or sale of any security using interstate commerce or the mails from (1) employing any device, scheme, or artifice to defraud; (2) making any untrue statement of material fact or omitting a statement of material fact necessary to make the statement not misleading; (3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. *E.g.,* 17 D.F.C. § 240.10b-5.

83.    The Defendants have violated the Securities Act and Exchange Act by employing fraudulent and deceptive devises, offering fraudulent misrepresentations, offering material misstatements of fact and omitting material facts in association with the promotion, offer, and sale of securities using means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly.

84.    The Defendants' use of fraudulent or deceptive devices, fraudulent misrepresentations, and material misstatements of fact in violation of the Securities Act and Exchange Act were, but not limited to, as follows:

    a.    In two or three telephone conversations between February 2007 and April 2007, Day represented to Plaintiff that the quarterly 8% returns on the investment were guaranteed, despite what was stated in any disclosure information. This representation was deceptive as risk information for the investment was contradictory;

    b.    In two or three telephone conversations between February 2007 and April 2006, Day represented that DBSI was a good company with a long standing history of solid investments. This representation was false, as the company operated at a loss for several years before Plaintiff's investment;

    c.    In two or three telephone conversations between February 2007 and April 2007, Day represented that Plaintiff's purposes for investing— meeting mortgage and living expenses for the trust beneficiary— would be fulfilled. This representation is contradicted by the risk information for the investment;

d.   In promotional material used by DBSI in promoting its investments, DBSI professed that "no investor had ever lost money." This statement was illusory and reflects that newly-raised investor funds were being used to pay off investors;

e.   In DBSI's financial statements, many, if not all, of the assets were reported at inflated values and did not accurately reflect the liabilities of the company. Further, many of the loan receivable amounts were concealed through their conversion into equity and did not accurately reflect the likelihood of being collected;

85.   The Defendants' material omissions in contravention to the Securities Act and Exchange Act were, but not limited to, as follows:

a.   That Defendants failed to conduct a thorough investigation of DBSI LIDF;

b.   That Defendants failed to scrutinize the accounting of DBSI LIDF;

c.   That Defendants failed to research the investigation conducted by the SEC of DBSI in 2005;

d.   That Defendants failed to disclose that the due diligence performed was limited to accepting information provided from DBSI at face value;

e.   That DBSI and its controlled entities were run as a unified business without regard for the separate identities of the companies within DBSI;

f.   That DBSI commingled funds from its various investments;

g.   That funds raised by DBSI were not used in accordance with the representations in the various PPMs.

h.   That highly questionable internal valuations and appraisals were used to support loans from the bond, note, and fund programs sponsored by DBSI;

i.   That the DBSI used the funds raised for one investment to meet the cash demands of previous investment;

j.   That the DBSI Group businesses were in continuous need of new investor funds to fund pre-existing obligations since at least as early as 2005;

k.   That DBSI consistently operated except for certain time periods when sales to TIC investors created booked profits;

l.   That, at times, loans were made from investor funds that were not backed by adequate security;

m.   That debt was reallocated through after-the-fact bookkeeping entries in an effort to make it appear that loans were adequately secured;

n.   That inflated values were arbitrarily assigned to assets "securing" loans;

o.   That DBSI engaged in year-end cash manipulations, which made it appear that certain entities were well capitalized when, in fact, they were not; and

p.   That the Defendants failed to disclose the percentage of the investment that would go towards paying commissions and finder's fees.

86.     The exercise of reasonable care by the Defendants should have easily revealed warning signs of the fraudulent investment. On information and belief, the Defendants relied on the information provided by DBSI regarding the investment and based on the commission received from selling the investment chose not to further investigate the investment.

**(Failure to Register)**

87.     The Securities Act and Exchange Act require an issuer or promoter of a security to file a registration statement prior to the promotion, offer, and sale of a security to the public.

88.     The Defendants promoted, offered, and sold securities to Plaintiff.

89.    The Defendants have not filed any registration statements concerning the securities promoted, offered, and sold to Plaintiff.

90.    The Defendants' failure to file any registration statement constitutes a violation of the Securities Act and Exchange Act.

**(Promoters)**

91.    The Defendants are considered "promoters" under the Securities Act and Exchange Act.

92.    Under the Securities Act and Exchange Act, a promoter is jointly and severally liable to a plaintiff for the unlawful acts of another promoter that violates securities regulations.

93.    By reason of the forgoing, the Defendants/Promoters directly violated provision of federal securities statutes as outlined above concerning the unlawful sale of unregistered securities using interstate commerce and have harmed Plaintiff in the amount of its principal investment of $180,000.00 plus interest at 12% per annum.

94.    By reason of the foregoing, the Defendants/Promoters directly violated provision of federal securities statutes as outlined above concerning the unlawful sale of unregistered securities using interstate commerce and have additionally harmed Plaintiff by causing it to incur costs and attorney fees associated with this proceeding and the loss of interest.

COUNT II – UTAH SECURITIES VIOLATIONS AGAINST DEFENDANTS
**(Deceptive or Fraudulent Devices, Fraudulent Misrepresentations, Misstatements of Material Fact and Omissions of Material Fact)**

95.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this Complaint as though fully set forth herein.

96.    The Defendants/Promoters engaged in the unlawful offering, sale, and promotion of unregistered securities in violation of the Utah Uniform Securities Act ("UUSA").

97.     The Defendants/Promoters offered to sell to Plaintiff an investment contract interest by offering an investment interest in the DBSI LIDF pursuant to U.C.A. 1953 § 61-1-1, *et seq.*

98.     Under the UUSA, it is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to (1) employ any device, scheme, or artifice to defraud; (2) make any untrue statement of material fact or omit a statements of material fact necessary to make the statement not misleading; or (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. *E.g., id.*

99.     Further, under the UUSA, it is unlawful for any person who receives any consideration from another person primarily for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise, to employ any devices, scheme, or artifice to defraud the other person or engage in any act, practice, or course of business which operates or would operates as a fraud or deceit upon the other person. *E.g., id.*

100.    The Defendants have violated the UUSA by employing fraudulent and deceptive devices, offering fraudulent misrepresentations, offering material misstatements of fact and omitting material facts, making untrue statements concerning value in association with the promotion, offer, and sale of securities within Utah.

101.    The Defendants have further violated the UUSA by omitting to disclose material facts in association with the promotion, offer, and sale of securities within Utah.

102.    Plaintiff incorporates by reference the Defendants' representations and omissions in paragraphs 84 and 85 herein as evidence of the Defendants' fraudulent and deceptive devices,

fraudulent misrepresentations, material misstatements, and material omissions in violation of the UUSA.

103.    By accepting consideration for the investment resulting from their abundant false representations, omissions of material fact, and scheme to defraud Plaintiffs as discussed previously herein, the Defendants/Promoters further violated the UUSA.

104.    The exercise of reasonable care by the Defendants should have easily revealed warning signs of the fraudulent investment. On information and belief, the Defendants relied on the information provided by DBSI regarding the investment and, based on the commission received from selling the investment, chose not to further investigate the investment.

### (Failure to Register)

105.    The UUSA requires an issuer of a security promoted, offered, or sold in Utah to file a registration statement prior to the promotion, offer, and sale of a security to the public. *E.g., id.*

106.    The Defendants have promoted, offered, and sold securities to Plaintiff in Utah.

107.    The Defendants have failed to file any registration statements concerning the securities promoted, offered, and sold to Plaintiff.

108.    The Defendants' failure to file any registration statements constitutes a violation of the UUSA.

### (Promoters)

109.    The Defendants are considered "promoters" under the UUSA.

110.    Under the UUSA, a promoter is jointly and severally liable to a plaintiff for the unlawful acts of another promoter that violates securities regulations.

111.    Further, pursuant to U.C.A. 1953 § 61-1-22(4)(a), every person who directly or indirectly controls a seller who is liable of securities fraud, including every partner, officer, director, employee who materially aids in the sale, and every broker-dealer who materially aides in the sale, is jointly and severally liable with and to the same extent as the seller, "unless the nonseller who is liable sustains the burden of proof that the nonseller or nonpurchaser did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."

112.    Defendants/Promoters were aware of the false statements being made by Day and provided much of the fraudulent information to Day.

113.    By reason of the foregoing, the Defendants/Promoters are jointly and severally liable for the actions and representations of Day.

114.    By reason of the foregoing, the Defendants/Promoters directly violated provisions of the UUSA as outlined above concerning the unlawful sale of unregistered securities in Utah using interstate commerce and have harmed Plaintiff in the amount of its principal investment of $180,000.00.

115.    By reason of the foregoing, the Defendants/Promoters directly violated provisions of the UUSA, as outlined above, concerning the unlawful sale of unregistered securities in Utah using interstate commerce and have additionally harmed Plaintiff by causing it to incur costs and attorney fees associated with this proceeding and the loss of interest.

116.    Based on the purposes of the trust, of which Defendants were aware, and the complete lack of investigation which Defendants otherwise represented, the actions of Defendants were intentional or reckless in nature and justify the awarding treble damages, attorneys' fees and costs in accordance with U.C.A. § 61-1-22(2).

COUNT III – FRAUDULENT NON-DISCLOSURE

117.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this Complaint as though fully set forth herein.

118.    More specifically, Plaintiff incorporates paragraph 85 herein relating to the Defendants' failure to disclose material facts regarding the DBSI LIDF investment.

119.    The Defendants in this case had a legal duty to disclose this information to Plaintiff as the Defendants were holding themselves out as investment promoters and advisors.

120.    Further, the Defendants in this case had duty to exercise due diligence in investigating all investments which they promote.

121.    The Defendants failed to fully investigate the DBSI LIDF investment, although they professed to have conducted due diligence inquiries.

122.    All of the above-listed non-disclosures were material to the project as they directly related to the profitability and legitimacy of the DBSI LIDF investment.

123.    If nothing else, the Defendants were aware of their failure to exercise due diligence regarding the DBSI LIDF investment.

124.    All of the Defendants were aware, or should have been aware, that the information not disclosed was material to the investment and should have been disclosed.

125.    The Defendants failed to disclose the above listed information for the specific purpose of increasing the likelihood that Plaintiff invest in DBSI LIDF.

126.    Plaintiff did, in fact, rely on the Defendants to fully disclose any information necessary to make the other representations made by the Defendants not misleading.

127.    As a direct result of the Defendants' negligence, Plaintiff has been damaged in an amount to be proven at trial but not less than an amount that includes the Plaintiff's principal

investment and missed interest payments, with reasonable attorneys' fees and costs associated with this action.

128.     Based on the purposes of the trust, of which Defendants were aware, and complete lack of investigation which Defendants otherwise represented, the actions of Defendants were intentional or reckless in nature and justify the awarding treble damages, attorneys' fees and costs in accordance with U.C.A. § 61-1-22(2).

<u>Count IV – Breach of Fiduciary Duty</u>

129.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this Complaint as though fully set forth herein.

130.     Plaintiff retained Day and Knox as its investment advisor based on the represented superior knowledge each possessed.

131.     Plaintiff entered into a special relationship of trust, confidence, and dependence with Defendants Day and Knox.

132.     Plaintiff fully informed Defendants Day and Knox that the principal amount invested needed to remain secure and have a guaranteed return to provide for the mortgage and living expenses of the beneficiary.

133.     Plaintiff depended on and put confidence in Defendants Day and Knox's superior knowledge.

134.     Defendants provided misleading information to Plaintiff and failed to inform Plaintiff of various aspects of the investment and company with which the investment would be handled.

135.     Accordingly, Defendant Day and Knox have breached a fiduciary duty owed Plaintiff.

136.    By reason of the foregoing, Defendants Day and Knox's breach of fiduciary duty has harmed Plaintiff/Investor in the amount of its principal investment of $180,000.00.

137.    By reason of the foregoing, Defendants Day and Knox's breach of fiduciary duty has harmed Plaintiff/Investor, further causing it to incur costs and attorneys' fees associated with this proceeding and the loss of interest.

<u>Count V – Negligence</u>
**(All Defendants)**

138.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this Complaint as though fully set forth herein.

139.    The Defendants owed Plaintiff a duty of care concerning its investment in DBSI LIDF.

140.    This duty of care includes researching publicly and generally available information regarding the investment, reviewing the accounting provided by DBSI, researching the course of dealing between DBSI and its sister companies and affiliates, and reviewing any statements made by DBSI regarding its financial position.

141.    The Defendants failed to exercise the requisite duty of care owed Plaintiff.

142.    The Defendants' failure to exercise care proximately and actually caused Plaintiff's damages.

143.    As a result of the foregoing, the Defendants have committed negligence.

144.    As a direct result of the Defendants' negligence, Plaintiff has been damaged in an amount to be proven at trial but not less than an amount that includes the Plaintiff's principal investment and missed interest payments, with reasonable attorneys' fees and costs associated with this action.

**(Ryan Day)**

145.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this Complaint as though fully set forth herein

146.    Day owed Plaintiff a duty of care in presenting investments in line with the purposes of the trust.

147.    Plaintiff explained to Day that the trust needed to provide for the mortgage and living expenses of the beneficiary, that the principal needed to remain secure at all times, and that the return on investment needed to be guaranteed.

148.    Knowing this information, Day recommended the DBSI LIDF investment to Plaintiff.

149.    In reality, the DBSI LIDF investment was not secure and did not guarantee specific returns on the investment.

150.    Day failed to exercise the requisite duty of care owed to Plaintiff by recommending an investment that was unsuitable for Plaintiff's needs and purposes.

151.    Plaintiff reasonably relied on Day's recommendation.

152.    Day's failure to exercise care proximately and actually caused Plaintiff's damages.

153.    As a result of the foregoing, Day has committed negligence.

154.    As a direct result of the Defendants' negligence, Plaintiff has been damaged in an amount to be proven at trial but not less than an amount that includes Plaintiff's principal investment and missed interest payments, with reasonable attorneys' fees and costs associated with this action.

<u>Count VI – Negligent Misrepresentation</u>

155.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this Complaint as though fully set forth herein.

156.    Day represented that DBSI was a solid company with a good track record for investments.

157.    Day also represented that Plaintiff was guaranteed the quarterly 8% return on its investment and that the investment was safe and secure.

158.    On information and belief, Day was acting as agent of Barnes and Geneos when making representations.

159.    The Defendants' representations of fact were not true.

160.    The Defendants failed to use reasonable care to determine whether the representations were true.

161.    The Defendants have a financial interest in the investment.

162.    As a direct result of the Defendants' negligent misrepresentations, Plaintiff has been damaged in an amount to be proven at trial but not less than an amount that includes the Plaintiff's principal investment and missed interest payments, with reasonable attorneys' fees and costs associated with this action.

<u>Count VII – Breach of Contract</u>
**(Knox)**

163.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this Complaint as though fully set forth herein.

164.    In February 2007, Plaintiff entered into a contract with Knox, whereby Knox would provide competent investment advice and receive a commission.

165.    Plaintiff provided Day with a payment between $5,000.00 and $7,500.00 to retain its services as its investment advisor.

166.    Knox promised that he would provide competent and reasonably prudent investment advice to Plaintiff.

167.    Defendant Knox breached his contract with Plaintiff by failing to provide competent and reasonably prudent investment advice in accordance with their agreement.

168.    Without limiting the generality of the foregoing, Day provided Plaintiff with poor or fraudulent investment advice regarding DBSI LIDF, constituting a breach of contract and resulting in substantial loss to Plaintiff, including but not limited to at least $180,000.00 lost in the DBSI LIDF scheme.

169.    Knox and/or via respondeat superior or agency, through its employees, servants, agents, or affiliates acting in the scope of their employment or agency, has breached its contractual duties as to Plaintiff.

170.    Plaintiff has been injured by Knox's breaches of contract in an amount to be proven at trial, but not less than $180,000.00 plus interest at 12% per annum from the date the first interest payment was not made.

171.    As a direct result of Knox's breach, Plaintiff has been damaged in an amount to be proven at trial but not less than an amount that includes the Plaintiff's principal investment, missed interest payments, and reasonable attorneys' fees and costs associated with this action.

**(Geneos)**

172.    Prior to investing in DBSI LIDF, Plaintiff was required to submit a "new account application" with Geneos.

173.   This application was approved by Geneos, and Plaintiff was permitted to invest in DBSI LIDF.

174.   A contract was formed between the two parties.

175.   Geneos was to provide competent and reasonably prudent investment advice.

176.   Geneos failed to provide competent and reasonably prudent investment advice and has, therefore, breached its contract with Plaintiff.

177.   As a direct result of Knox's breach, Plaintiff has been damaged in an amount to be proven at trial but not less than an amount that includes the Plaintiff's principal investment, missed interest payments, and reasonable attorneys' fees and costs associated with this action.

### Count VII – Breach of the Implied Covenant of Good Faith and Fair Dealing

178.   Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this Complaint as though fully set forth herein.

179.   Pursuant to Utah law, each and every contract entered into in the state of Utah carries with it an implied covenant of good faith and fair dealing.

180.   The implied covenant of good faith and fair dealing imposes a burden upon the contracting parties to act in such a way as to ensure the other parties receive the fruits of the contract.

181.   Knox and Geneos, through their employees, servants, agents, principals, and/or affiliates, breached this covenant by failing to fully research the DBSI LIDF investment while representing that they had completed their due diligence requirements.

182.   Knox and Geneos further failed to inform Plaintiff of DBSI's management policies, i.e. commingling of funds, complete disregard for the identity of the separate DBSI entities, and DBSI's continuous use of funds for purposes other than stated in its PPMs.

183.     As a result of this breach of the implied covenant of good faith and fair dealing,

Plaintiff has suffered damages in an amount no less than its principal investment of $180,000.00

plus interest at 12% per annum, plus all legal fees incurred through this lawsuit.


## COUNT VIII – NEGLIGENT SUPERVISION

184.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this

Complaint as though fully set forth herein.

185.     John Doe had a duty to supervise Day.

186.     Day encouraged Plaintiff to invest in DBSI LIDF, knowing due diligence had not

been conducted on the investment.

187.     John Doe's negligent supervision of Day permitted Day to give unsound advice to

Plaintiff that was the direct and proximate result of the damages sustained by Plaintiff.

188.     As a result of John Doe's failure to supervise Day, Plaintiff has been damaged in

an amount no less than its principal investment of $180,000.00 plus interest at 12% per annum,

plus legal fees incurred through this lawsuit.

## COUNT IX – COMPATIBILITY

189.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs of this

Complaint as though fully set forth herein.

190.     Day had been fully informed Plaintiff sought that the investment be safe with a

guaranteed return sufficient enough to cover the mortgage and living expenses of the beneficiary.

191.     The investment provided to Plaintiff was not compatible.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

1.      That Plaintiff be awarded judgment on each and every action contained herein in the amount requested or in the amount proven at trial;

2.      That pursuant to Utah Code Annotated §61-1-22(2), Plaintiff be awarded treble damages and attorneys' fees for the fraudulent actions of the Defendants; and

3.      That Plaintiff be awarded any other and further relief that the Court deems just and equitable.

SIGNED AND DATED this 6th day of December, 2010.


   /s/ Patrick J. Ascione
PATRICK J. ASCIONE
MALISA WHITING
Attorneys for Plaintiff